

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-07-033-CV**

THOMAS JAY DANGERFIELD                                                    APPELLANT

V.

JACOB ORMSBY AND ACADEMY,
LTD.                                                                     APPELLEES

------------

FROM THE 342ND DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

### I. Introduction

Appellant Thomas Jay Dangerfield appeals from the summary judgment rendered in favor of appellees Jacob Ormsby and Academy, Ltd. In one issue, appellant argues that there were genuine issues of material fact on his claims of false imprisonment, malicious prosecution, and negligence. We affirm.

## II. Background Facts

On August 16, 2004, at 2:00 p.m., Cindy Ann Perry-Alm, a loss prevention employee for Academy, was about to leave the store when she saw a white Honda pull up and park in the fire lane, which she thought was odd. She observed a man enter the store, head to the watch counter, pick up a watch, take it out of the package, and hold it in his hand. He then went to the second watch counter and took another watch. Perry-Alm got supervisor Ormsby's attention as the man went into the apparel department, concealed both watches, removed the security devices, and left the store. Perry-Alm, with Ormsby about fifteen to twenty feet behind her, followed the man out of the store, identified herself, and asked him to come back inside; the man pushed her to the ground and drove off. Perry-Alm called 9-1-1, and a customer in the parking lot wrote down a description of the car and a partial tag number. The whole incident lasted about four or five minutes.

Perry-Alm described the suspect as a black male in his forties who was six feet, three or four inches tall, very thin, and 160–175 pounds, with facial hair. The suspect wore a baseball cap, jeans, a Hawaiian shirt, and big, square eyeglasses.

When White Settlement Police Officer S. Denham arrived, he checked the license plate provided and discovered that the car was registered to Debra

2

Henry. On September 9, 2004, White Settlement Police Officer Timothy N.T. Scott, who was assigned the case, reviewed the file and went to the French Quarter Apartments, the address listed for Debra Henry. He went to the leasing office and spoke with the manager about the person who lived in apartment 220. Officer Scott learned that appellant lived in the apartment and not Debra Henry. The manager allowed Officer Scott to review the apartment's file on appellant and copy appellant's driver's license. Officer Scott believed that appellant's driver's license picture matched Perry-Alm's description of the suspect. Officer Scott also researched appellant's criminal history, which included theft, marijuana possession, and forgery. Based on the information he had collected, Officer Scott believed that appellant was the suspected shoplifter.

On September 10, 2004, Officer Scott contacted appellant's Parole Officer, Joanne Brandon, and told her that appellant was a suspect in a robbery. Because the shoplifting incident report alleged that the suspect had touched or physically shoved another person, Parole Officer Brandon filed a parole violation report.

Officer Scott used appellant's driver's license photograph to create a photo line-up. Scott attempted to contact Perry-Alm to view the photo line-up, but he discovered that she no longer worked for Academy. Academy's director

3

of loss prevention asked Ormsby to assist Officer Scott, and Ormsby agreed to look at a photo line-up. On September 13, 2004, Ormsby viewed the photo line-up for about sixty to ninety seconds, picked out appellant as the shoplifter, and initialed the line-up.

On September 15, 2004, Officer Scott obtained a probable cause warrant from the local magistrate, which led to appellant's arrest. During appellant's incarceration, Debra Henry, appellant's sister and the car's registered owner, contacted an attorney and explained that her boyfriend, Robert Adams, borrowed her car on August 16, 2004, and committed the theft at Academy. Adams subsequently confessed to the crime. Perry-Alm viewed Adams's taped confession and identified him as the shoplifter.[1]

Appellant was incarcerated from September 15, 2004 to November 23, 2004, a period of seventy days. After he was released, appellant sued appellees for false imprisonment, intentional infliction of emotional distress, malicious prosecution, negligence, and gross negligence. Appellees filed a traditional motion for summary judgment on appellant's false imprisonment and malicious prosecution claims and a no evidence motion for summary judgment on those claims and on appellant's intentional infliction of emotional distress

---

[1] The record does not indicate whether or not Adams was charged with or convicted of a crime. He died in March 2005 of lung cancer.

4

and negligent hiring claims, which the trial court granted.  Appellant timely filed this appeal, claiming that there is some evidence of his false imprisonment, malicious prosecution, and negligence claims.[2]

### III. Standard of Review

After adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense.  TEX. R. CIV. P. 166a(i).  The motion must specifically state the elements for which there is no evidence.  *Id.; Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 207 (Tex. 2002).  The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact.  *See* TEX. R. CIV. P. 166a(i) & cmt.; *Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex. 2002).

When reviewing a no evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable

---

[2] When a party moves for summary judgment under both rules 166a(c) and 166a(i), we will first review the trial court's judgment under the standards of rule 166a(i).  *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 600 (Tex. 2004).  If the appellants failed to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether appellee's summary judgment proof satisfied the less stringent rule 166a(c) burden.  *Id.*

5

inference and resolving any doubts against the motion.[3] *Sudan v. Sudan,* 199 S.W.3d 291, 292 (Tex. 2006). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no evidence summary judgment is not proper. *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied).

### IV. False Imprisonment and Malicious Prosecution

In their motion, Academy and Ormsby claimed that there was no evidence that they initiated or procured a criminal prosecution or false imprisonment of appellant. Appellant argues that there is some evidence supporting his false imprisonment and malicious prosecution claims. Because the causes of action have similar elements, we will address them together.

### A. False Imprisonment

The essential elements of false imprisonment are (1) a willful detention, (2) without consent, and (3) without authority of law. *Wal-Mart Stores, Inc. v. Rodriguez,* 92 S.W.3d 502, 506 (Tex. 2002). Additionally, in Texas, liability for false imprisonment extends beyond those who willfully participate in detaining the complaining party to those who request or direct the detention. *Id.* at 507. False imprisonment's first element may thus be satisfied by conduct

---

[3] Appellant incorporated by reference everything filed of record or otherwise contained in the court's file as summary judgment evidence.

6

that is intended to cause one to be detained, and in fact causes the detention, even when the actor does not participate in the detention. *Id.* When the alleged detention results from an unlawful arrest, to prove instigation, a plaintiff must show that the defendant clearly directed or requested the arrest. *Id.* Thus, to hold a third party liable for instigating the detention, the act of arrest must be made by the officer, not of his or her own volition, but to carry out the request of the defendant. *Id.*

However, a private citizen who merely reports a crime and identifies the suspect to law enforcement authorities has not requested or directed the suspect's arrest and will not be liable for instigating a subsequent false imprisonment. *Id.* A citizen has a clear legal right to report criminal misconduct to authorities even when the reporting party mistakenly identifies the wrong person so long as the reporting party leaves to the police the decision as to what shall be done about any arrest, without persuading or influencing them. *Id.* at 507–08.

### B.  Malicious Prosecution

To prevail on a malicious prosecution claim, a plaintiff must establish

(1) the commencement of a criminal prosecution against the plaintiff,

(2) causation (initiation or procurement) of the action by the defendant,

7

(3) termination of the prosecution in the plaintiff's favor,

(4) the plaintiff's innocence,

(5) the absence of probable cause for the proceedings,

(6) malice in filing the charge, and

(7) damage to the plaintiff.

*Richey v. Brookshire Grocery Co.,* 952 S.W.2d 515, 517 (Tex. 1997). A person initiates a criminal prosecution if he makes a formal charge to law enforcement authorities. *Browning-Ferris Indus., Inc. v. Lieck,* 881 S.W.2d 288, 292 (Tex. 1994). A person procures a criminal prosecution if his actions are enough to cause the prosecution, and but for his actions the prosecution would not have occurred. *Id.* In other words, procurement requires that a person's actions be both a necessary and a sufficient cause of the criminal prosecution. *Id.* Thus, a person cannot procure a criminal prosecution when the decision whether to prosecute is left to the discretion of another person, a law enforcement official, or the grand jury. *Id.* Because malicious prosecution actions involve a delicate balance between society's interest in the efficient enforcement of the criminal law and the individual's interest in freedom from unjustifiable and oppressive criminal prosecution, a person is not liable for merely aiding or cooperating in causing a criminal prosecution. *Id.; see also Richey,* 952 S.W.2d at 517.

8

**C.    Procurement and Instigating**

The Texas Supreme Court has noted the similarity between the causation standards of "procuring" a criminal proceeding, which is required for a malicious prosecution claim, and "instigating" an arrest, which is an element of a false imprisonment claim. *See Wal-Mart,* 92 S.W.3d at 509. For a defendant to procure proceedings, it must appear that his desire to have the proceedings initiated, expressed by his direction, request, or pressure of any kind, was the determining factor in the official's decision to commence the prosecution. *Id.* Thus, much like the initiation of a false imprisonment, the procurement of criminal proceedings requires a direction or request for the action taken. *Id.* Also, like the false imprisonment rule, merely reporting a crime and the suspected criminal to law enforcement authorities does not constitute procurement of criminal proceedings when the authorities exercise discretion in deciding whether to prosecute. *Id.*

However, a person reporting criminal conduct to the authorities may nevertheless be considered to have procured the proceedings if he provides information that he knows is false. *Id.* This exception to the rule is justified because a person who provides false information cannot later complain if a prosecutor acts on it. *Id.* Such a person has procured the resulting prosecution, regardless of the actions of the prosecutor, and the causation

9

element for malicious prosecution is satisfied; this same reasoning applies with equal force in the false imprisonment context. *Id.*

## D.    Analysis

Although neither Ormsby nor Academy participated in appellant's arrest and detention, appellant argues that Ormsby selected him in the photo line-up knowing that he did not commit the crime, which he claims amounted to directing the police to arrest him.

Academy employees Ormsby and Perry-Alm witnessed the shoplifting incident and provided information to Officer Denham regarding the suspect's physical description. Ormsby later identified appellant in the photo line-up as the person he believed was the shoplifter. Neither Ormsby and Perry-Alm, nor Academy through them, identified appellant by name as the shoplifter; they only provided the police with a physical description of the shoplifter. Additionally, Ormsby had never heard of appellant until he was told appellant's name after identifying him as the shoplifter in the photo line-up. Appellant produced no evidence to show that Ormsby knew he was providing false information. At no time did Academy or Ormsby do much more than report a crime and mistakenly identify the wrong person.[4] *See id.* at 507.

---

[4] Officer Scott testified that Ormsby told him not to contact Perry-Alm because she no longer worked at Academy; however, Officer Scott did attempt

Furthermore, appellant produced no evidence to show that Academy, Ormsby, or Perry-Alm contacted Parole Officer Brandon or Officer Scott and requested or directed appellant's arrest. *See id.*; *Lieck*, 881 S.W.2d at 292. Parole Officer Brandon had the discretion to file a parole violation report on appellant after Officer Scott told her that appellant was a suspect in a shoplifting incident. Parole Officer Brandon did not conduct any investigation after speaking with Officer Scott, nor did she have any independent information other that what Officer Scott told her. Additionally, Officer Scott stated that the police department decided to charge appellant with theft under $1,500 because of his two prior convictions and that he then submitted the case to the district attorney's office. Officer Scott made the determination to forward the case to the district attorney's office. He also stated that neither Academy nor Ormsby pressured him to refer the case to the district attorney's office.

Because a private citizen who reports a crime and mistakenly identifies the wrong person has not requested or directed the suspect's arrest, and because there is no evidence they knowingly provided false information to the police, neither Academy nor Ormsby is liable for instigating appellant's subsequent imprisonment or for procuring criminal proceedings against him.

to contact her to have her review the photo line-up but was unsuccessful.

*See Wal-Mart,* 92 S.W.3d at 507; *Lieck*, 881 S.W.2d at 292. The choice to detain and arrest appellant was made by the police department and not at the direction or instruction of either Orsmby or Academy. Additionally, the decision whether to arrest and prosecute appellant was left to the discretion of the Officer Scott, Parole Officer Brandon, and the district attorney's office. *See Wal-Mart,* 92 S.W.3d at 507; *Lieck*, 881 S.W.2d at 292. Therefore, the trial court did not err in rendering summary judgment for appellees on the false imprisonment and malicious prosecution claims. We overrule this portion of appellant's sole issue.

### V. Negligent Hiring, Training, Retention, and Supervision

Academy also filed a no evidence motion for summary judgment on appellant's negligence claims. Appellant argues that there is some evidence that Academy negligently hired, trained, retained, and supervised Ormsby.

### A. Applicable Law

Negligent hiring, retention, and supervision claims are all simple negligence causes of action based on an employer's direct negligence rather than on vicarious liability. *Morris v. JTM Materials, Inc.,* 78 S.W.3d 28, 49 (Tex. App.—Fort Worth 2002, no pet.). The elements of a negligence action are duty, a breach of that duty, and damages proximately caused by the breach. *Id.*; *see also Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523,

525 (Tex. 1990). An employer owes a duty to the general public to ascertain the qualifications and competence of the employees it hires, especially when the employees are engaged in occupations that require skill or experience and that could be hazardous to the safety of others. *Morris,* 78 S.W.3d at 49. Therefore, an employer is liable for negligent hiring, retention, or supervision if it hires an incompetent or unfit employee whom it knows, or by the exercise of reasonable care should have known, was incompetent or unfit, thereby creating an unreasonable risk of harm to others. *Id.*

Negligence in hiring or retention requires that the employer's failure to investigate, screen, or supervise its employees proximately cause the injuries the plaintiff alleges. *Fifth Club, Inc. v. Ramirez,* 196 S.W.3d 788, 796 (Tex. 2006). An employer is not negligent when there is nothing in the employee's background that would cause a reasonable employer not to hire or retain the employee. *Id.; Ogg v. Dillard's Inc.,* 239 S.W.3d 409, 421 (Tex. App.—Dallas 2007, pet. denied.). To establish a claim for negligent training, a plaintiff must prove that a reasonably prudent employer would have provided training beyond that which was given and that failure to do so caused his injuries.[5] *See*

---

[5] For purposes of our analysis, we assume without deciding that a cause of action for negligent training exists under Texas law. *See TXI Transp. Co. v. Hughes,* 224 S.W.3d 870, 902 n.39 (Tex. App.—Fort Worth 2007, pet. granted) (observing that the Waco court has recognized "a *negligent training*

13

*Allsup's Convenience Stores, Inc. v. Warren,* 934 S.W.2d 433, 437 (Tex. App.—Amarillo 1996, writ denied). To establish a claim for negligent supervision, a plaintiff must show that an employer's failure to supervise its employees caused his injuries. *See Knight v. City Streets, L.L.C.,* 167 S.W.3d 580, 584 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Morris,* 78 S.W.3d at 49.

Appellees' motion claimed that appellant had no evidence of proximate cause. The components of proximate cause are cause-in-fact and forseeability. *Knight,* 167 S.W.3d at 584. To establish that Academy's actions were the proximate cause of appellant's injuries, appellant must produce evidence that raises a genuine issue of material fact that Academy's actions in hiring, retaining, training, and supervising Ormsby were the cause-in-fact of his injuries. *See id; see also Fifth Club,* 196 S.W.3d at 796; *Morris,* 78 S.W.3d at 49; *Allsup's,* 934 S.W.2d at 437.

---

theory of recovery"); *see also Builders Transport, Inc. v. Grice-Smith,* 167 S.W.3d 1, 10 (Tex. App.—Waco 2005, no pet.), *judgm't withdrawn and superseded on reh'g*, 167 S.W.3d 18 (Tex. App.—Waco 2005, pet. denied); *Allsup's Convenience Stores, Inc. v. Warren,* 934 S.W.2d 433, 437 (Tex. App.—Amarillo 1996, writ denied).

**B. Analysis**

There is no evidence to support appellant's negligence claims. Appellant cited Ormsby's discharge from the military for a depressive disorder and Ormsby's failure to provide sufficient detail on the police report as evidence of Academy's negligent hiring, training, retention, and supervision. Appellant also included Academy's associate handbook, core values, and security procedures in its response to appellees' motion for summary judgment as evidence of Academy's negligent hiring, training, retention, and supervision. However, appellant fails to explain how this evidence relates to his claims.

Regardless, there is nothing in Ormsby's employee record to show that he was incompetent or unfit for Academy to hire. *See Fifth Club,* 196 S.W.3d at 796; *Ogg,* 239 S.W.3d at 422. There is also no evidence that Ormsby was incompetent or unfit for a position as a loss prevention employee such that Academy was negligent in retaining him after he was hired. *See Fifth Club,* 196 S.W.3d at 796; *Ogg,* 239 S.W.3d at 422. Additionally, there is no evidence that Academy should have provided more training or supervision beyond that which was given.[6] *See Allsup's,* 934 S.W.2d at 437.

---

[6] The trial court sustained appellees' objections to appellant's expert report on negligent hiring, training, retention, and supervision; appellant does not appeal that ruling.

Furthermore, as previously noted, there is no evidence that Academy or Ormsby proximately caused appellant's injuries because, as addressed above, they were not responsible for appellant's arrest or detention. Ormsby stated that Academy's policy was to refer shoplifting cases to the police department; after that, it was beyond Academy's control as to the disposition of the case. Appellant did not produce evidence to show a link between Ormsby's depressive disorder, Academy's training procedures, and Ormsby's potential or actual job performance. Thus, appellant did not present any evidence to connect Academy's alleged negligent hiring, training, retention, or supervision to appellant's injuries. *See Fifth Club,* 196 S.W.3d at 796.

Therefore, because appellant did not present any evidence of Academy's negligence and because Academy and Ormsby were not the proximate cause of appellant's injuries, we conclude that the trial court did not err in granting summary judgment for appellees and dismiss appellant's negligent hiring, training, retention, and supervision claims. We overrule this portion of appellant's sole issue.

## VI. Conclusion

Having overruled appellant's sole issue, we affirm the trial court's summary judgment in favor of Academy and Ormsby.

TERRIE LIVINGSTON
JUSTICE

PANEL:  LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

DELIVERED: August 14, 2008

17