# United States Court of Appeals
# for the Fifth Circuit

————————

No. 23-10178
Summary Calendar

————————

United States Court of Appeals
Fifth Circuit

**FILED**
February 6, 2024

Lyle W. Cayce
Clerk

Dare Matthews,

*Plaintiff—Appellant*,

*versus*

Detective E. Green, *Individually*; Stephanie Springer,
*Individually*,

*Defendants—Appellees*.

————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:22-CV-471

————————————————————

Before Higginbotham, Stewart, and Southwick, *Circuit Judges*.
Per Curiam:[*]

Dare Matthews appeals the district court's dismissal of her civil rights and state law claims against Detective E. Green and Stephanie Springer. Because Matthews fails to plead facts sufficient to allege that Green or Springer violated her rights, we AFFIRM.

————————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-10178

# I.     Background

## A.     *Matthews & Springer's Troubles*

Springer owns and operates a gym, Texas Fitt, where Matthews trained for roughly one month. During this period, she states that she had only limited interactions with Springer, having only exchanged "courtesy hellos" on one occasion.

Matthews and Springer's relationship quickly changed from limited and pleasant to frequent and aggressive as the parties bickered with each other on numerous occasions from September 2019 to May 2020. These exchanges included: (1) phone calls to the Pantego Police Department and Arlington Police Department ("APD"), (2) a flurry of harassing phone calls and threatening emails, (3) harassment on social media, (4) a cease-and-desist letter "instructing [Springer] to stop" bothering Matthews, and (5) discussions of potential physical altercations.

In April 2020, Springer contacted APD and her case was assigned to Green. Springer told Green that Matthews had engaged in a string of harassing and intimidating conduct over the last year. Specifically, she accused Matthews of: (1) sabotaging her businesses by leaving hundreds of one-star reviews on Google and Yelp; (2) following Springer and her husband around town; (3) repeatedly sending her derogatory, profane emails; and (4) taking pictures of her minor daughter and emailing them to her.

Green decided that he had enough information to seek an arrest warrant for Matthews, completed an affidavit, and provided it to a magistrate judge. In the affidavit, he testified that Matthews sent several obscene and sexually provocative emails in violation of Texas Penal Code § 42.07(a)(1). The magistrate judge signed the warrant and Matthews was eventually arrested for "18 hours." During her arrest, she claims that she was "subject

No. 23-10178

to excessive physical searches, injection with an unknown substance, extreme unsanitary conditions, and confinement in a bathroom."

Matthews was released the next day. As a condition of her release, she agreed to not possess any firearms or consume alcohol. This restriction lasted for two years, ending after the prosecution dropped all charges against her. Matthews sued Green, Springer, and the State of Texas[1] under 42 U.S.C. § 1983 and state law.

B.    *District Court Proceedings*

At the district court, Matthews alleged that Green violated her Fourth Amendment rights by arresting her without probable cause and triggering her prosecution without probable cause. She also claimed that Springer and Green conspired to cause her malicious prosecution. She coupled her federal claims with numerous state law claims, including: (1) false imprisonment; (2) false arrest; (3) assault; and (4) malicious prosecution. Finally, she sought a declaratory judgment "that the Texas harassment statute [was] [u]nconstitutional both facially and as applied to [Matthews]." Springer and Green moved to dismiss all of Matthews's claims.

The district court granted Springer and Green's motions. As to Springer, it first held that Matthews did not plead sufficient facts alleging that she was a state actor for the purposes of a § 1983 claim. It then grappled with the many state law claims against Springer. Beginning with Matthews's false imprisonment claim, the district court held that Matthews failed to plead facts demonstrating that she caused her false imprisonment under Texas's

---

[1] The State of Texas was dismissed without prejudice due to Matthews's failure to serve the State as a defendant as required by Rule 4(m). Matthews does not challenge the district court's decision, leaving only Green and Springer as Appellees properly before us now.

"instigation standard." It then held that Matthews failed to establish the requisite intent for an assault charge. Finally, it rejected the malicious prosecution claim because Matthews did not plead facts showing that "Springer's desire to pursue prosecution was the determining factor in the official's decision to commence the prosecution."

The district court addressed Green next, granting him qualified immunity on each of Matthews's claims. It began with federal conspiracy, holding that Matthews had not pleaded that Green and Springer ever came to an agreement to violate her Fourth Amendment rights. It moved on to false arrest, rejecting the claim because Matthews did not "assert facts that Green knew that" Springer's complaints were baseless. Finally, it rejected Matthews's malicious prosecution claims against Green because she offered no caselaw establishing Green's conduct as violative of clearly established law. Matthews timely appealed.

On appeal, Matthews asks us to reverse the district court's dismissal of her: (1) § 1983 claims against Green for allegedly arresting and forcing the prosecution of her without probable cause; and (2) § 1983 and state law claims against Springer.[2]

_____

[2] Notably, Matthews has considerably narrowed the number of claims advanced on appeal. "Our court routinely dismisses arguments as abandoned when parties fail to brief them." *Faciane v. Sun Life Assurance Co. of Canada*, 931 F.3d 412, 423 (5th Cir. 2019). We do so here, as well.

No. 23-10178

## II.    Standard of Review

We review a district court's grant of a motion to dismiss de novo. *Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012). While we accept a plaintiff's well-pleaded facts as true at this stage, she must allege "more than unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Her complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III.    Discussion

### A.    *Green*

Matthews argues that Green violated her Fourth and Fourteenth Amendment rights by subjecting her to an arrest and subsequent prosecution without probable cause. She further avers that Green is not entitled to qualified immunity because his conduct is a clearly established violation of her constitutional rights. We disagree.

Qualified immunity protects public officials from civil liability when they lack notice that their conduct is unlawful. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021) (quotation and citation omitted). This requires a plaintiff to allege: "(1) the violation of a federal constitutional or statutory right; and (2) that the right was clearly established at the time." *Id.* (citation omitted).

"The Fourth Amendment guarantees the right of the people to be secure in their persons against unreasonable searches and seizures and that no warrants shall issue, but upon probable cause." *Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019) (cleaned up). Thus, "[a] constitutional claim

No. 23-10178

for false arrest . . . 'requires a showing of no probable cause.'" *Id.* (quoting *Club Retro, LLC v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009).

A claim of malicious prosecution requires a plaintiff to demonstrate that: (1) "the suit or proceeding was 'instituted without any probable cause'"; (2) "the 'motive in instituting' the suit 'was malicious,'"; and (3) "the prosecution" terminated in favor of the accused." *Armstrong v. Ashley*, 60 F.4th 262, 278 (5th Cir. 2023) (quoting *Thompson v. Clark*, 142 S. Ct. 1332, 1338 (2022)).

Probable cause is established by the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Piazza v. Mayne*, 217 F.3d 239, 245–46 (5th Cir. 2000) (quotation and citation omitted). The probable cause analysis "'does not demand any showing that the belief that an offense was committed be correct or more likely true than false.'" *Id.* at 246 (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983) (alteration omitted)). Rather, it requires us to "find a basis for an officer to believe to a 'fair probability' that a violation occurred." *Id.* (quoting *United States v. Antone*, 753 F.2d 1301, 1304 (5th Cir. 1985)).

Matthews's arguments regarding Green turn on whether the detective violated her constitutional right to be free from false arrests and malicious prosecution. Each contention requires Green to have acted in the absence of probable cause. Accordingly, our first and only inquiry is whether Green had probable cause when seeking and obtaining a warrant for Matthews's arrest. We hold that he did, so he is entitled to qualified immunity.

Matthews primarily asserts that Green did not have probable cause supporting a warrant for her arrest because he "did no corroboration or

independent policework whatsoever to validate his warrant affidavit." She insists that Green's decision to simply trust Springer's side of the story when drafting and submitting his affidavit disqualifies him from having probable cause. But whether Green investigated Springer's claims to her satisfaction is not the standard. The probable cause standard sounds in reasonableness and is entirely objective. *United States v. Walden*, 707 F.2d 129, 131 (5th Cir. 1983) ("Probable cause is an objective standard."). In other words, our task is not evaluating whether Green could have gathered more facts to Matthews's liking. Instead, it is simply to gauge whether he had enough facts, from any source, to reasonably conclude that Matthews violated Texas Penal Code § 42.07(a)(1).[3]

Here, the record is replete with more than enough facts to seek a warrant for Matthews's allegedly "obscene" emails, phone calls, and social media messaging exchanges.[4] For example, Springer brought Green emails indisputably from Matthews that were vulgar, offensive, and sexual-in-nature, repeatedly referring to Springer's genitalia and posing sexually provocative questions to her. That fact, along with the others contained in Green's affidavit, was enough for any reasonable officer to believe that a crime occurred.

Matthews takes issue with the fact that Green didn't ask if she "initiate[d]" the communication, as required by § 42.07(a)(1). But she offers

---

[3] Texas Penal Code § 42.07(a)(1) provides that a "person commits an offense if, with intent to harass, annoy, . . . torment, or embarrass another, the person . . . initiates communication and in the course of the communication makes a comment . . . that is obscene."

[4] Texas Penal Code § 42.07(b)(3) defines "obscene" "as [a] patently offensive description of or a solicitation to commit an ultimate sex act, including sexual intercourse, masturbation, cunnilingus, fellatio, or anilingus, or a description of an excretory function."

no caselaw supporting her position that Green was required to do so before seeking a warrant. And given the sheer number of emails, texts, and social media messages, we agree that it was reasonable for Green to proceed on the information he obtained from Springer at the time. At bottom, Green "believe[d] to a fair probability that a violation occurred." *Piazza*, 217 F.3d at 246. Because Matthews pleaded facts establishing Green's probable cause for arresting her under state law, he did not violate her Fourth or Fourteenth Amendment rights and is therefore entitled to qualified immunity from Matthews's suit. *See Ramirez*, 3 F.4th at 133 (explaining that a plaintiff must plead a constitutional or statutory violation to overcome a public official's qualified immunity defense).

  B.  *Springer*

    1.  *Section 1983 Claims*

Despite Matthews's arguments to the contrary, the district court determined that Springer could not be liable in a § 1983 suit under well-established state-action principles. We agree.

"To plead a constitutional claim under § 1983, [Matthews] must allege that a state actor violated a constitutional right." *Torres v. Livingston*, 972 F.3d 660, 662 (5th Cir. 2020). We have repeatedly explained that private parties do not qualify as state actors in § 1983 suits absent allegations that the "the challenged conduct may be fairly attributable to the State." *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999); *Rundus v. Dall.*, 634 F.3d 309, 312 (5th Cir. 2011). Moreover, this court has consistently held that merely communicating with police officers, without something more, hardly brings an otherwise private actor into the State's orbit for § 1983 purposes. *Daniel v. Ferguson*, 839 F.2d 1124, 1130 (5th Cir. 1988) ("Police reliance in making an arrest on information given by a private party does not make the private party a state actor.").

Here, Matthews fails to allege that Springer's conduct is in any way attributable to Green or any other State entity. At best, Matthews alleges that Springer provided Green with misleading, potentially false information in hopes that he would arrest her. But, as the district court explained, she fails to allege facts demonstrating that Springer acted "under color of state law." *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008). Absent some "fairly attributable" conduct, Springer is not a state actor and thus cannot be the subject of a § 1983 suit. *Bass*, 180 F.3d at 312. We therefore affirm the district court's dismissal of Matthews's conspiracy claim against Springer.[5]

### 2. *Texas Tort Law Claims*

Matthews also maintains her argument that Springer is independently liable for a bevy of tort violations under Texas law, including: (1) false imprisonment; (2) assault; (3) malicious prosecution; and (4) conspiracy. We address each claim in turn.

#### i. *False Imprisonment & Assault*

Matthews asserts that Springer caused her false arrest by Green, which she insists amounts to false imprisonment and assault under Texas law. We disagree.

False imprisonment has three "essential" elements: "(1) willful detention; (2) without consent; (3) without authority of law." *Rodriguez*, 92 S.W.3d at 506. The Texas Supreme Court has explained that "liability for false imprisonment extends beyond those who willfully participate in detaining the complaining party to those who request or direct the detention." *Id.* at 507 (footnote omitted). This theory is commonly referred

---

[5] It is unclear whether Matthews also attempts to advance her state law claims and theories against Springer under § 1983. To the extent that she endeavors to do so, our holding that Springer is not a proper defendant similarly applies to those efforts.

to as the "instigation of the false imprisonment." *Id.* (footnote omitted). Under instigation theory, the willful detention element may be satisfied "by conduct that is intended to cause one to be detained, and in fact causes the detention, even when the actor does not participate in the detention." *Id.* (footnote omitted).

Regarding assault, the Texas Supreme Court has explained that "an assault occurs if a person . . . intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." *Loaisiga v. Cerda*, 379 S.W.3d 248, 256 (Tex. 2012) (citation omitted). Relevantly, false imprisonment and assault share a common element: intent.

Here, Matthews failed to provide facts demonstrating that Springer intended for Green to falsely imprison or assault her. True, she repeatedly stated that Springer caused her arrest, assault, and imprisonment by going to Green and complaining about her conduct. But the instigation standard requires more than just that to establish causation. For her instigation theory to be successful, Matthews had to plead that Springer's conduct was the equivalent of her exclaiming "Officer, arrest that man!" *Rodriguez*, 92 S.W.3d at 507 (quoting Restatement (Second) of Torts § 45A cmt. c.). Matthews's pleadings do not clear this high standard, so she has not demonstrated the requisite intent for false imprisonment. *Id.*

The intent element is also lacking from Matthews's assault claim. Her alleged assault directly stems from her arrest. Because we have determined that Matthews failed to plead facts establishing that Springer intended for her to be falsely imprisoned, we must also conclude that those same facts fail to demonstrate that Springer intended that the police officers assault her. Put differently, Springer did not control, direct, or influence the police officers to do anything—Green and APD used their own professional discretion in

deciding to arrest Matthews. We affirm the district court's dismissal of both claims.

## ii.    *Malicious Prosecution*

Matthews also asserts that Springer is liable for malicious prosecution under Texas law. Not so. To prevail in a malicious prosecution claim, a plaintiff must establish seven elements:

> (1) the commencement of a criminal prosecution against the plaintiff; (2) causation (initiation or procurement) of the action by the defendant; (3) termination of the prosecution in the plaintiff's favor; (4) the plaintiff's innocence; (5) the absence of probable cause for the proceedings; (6) malice in filing the charge; and (7) damage to the plaintiff.

*Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997). Causation is particularly difficult to establish, like the "instigation" standard in false imprisonment cases. *See Dangerfield v. Ormsby*, 264 S.W.3d 904, 910–11 (Tex. App.—Fort Worth 2008) (comparing instigation under false imprisonment to causation or procurement in malicious prosecution). Essentially, "the procurement of criminal proceedings requires a direction or request for the action taken." *Id.* And "merely reporting a crime and the suspected criminal to law enforcement authorities does not constitute procurement of criminal proceedings when the authorities exercise discretion in deciding whether to prosecute." *Id.*

Matthews fails here for the same reasons that she did at the district court—she has provided no facts demonstrating that Springer caused or procured her prosecution. She merely asserts, in conclusory fashion, that Springer robbed Green of his independent decision to obtain the warrant that led to her eventual arrest and prosecution. But, by her own words, she never pleads that Springer did anything more than "wish[]" for her prosecution.

No. 23-10178

Simply wishing for someone's prosecution does not equate to directly procuring the same. *Dangerfield*, 264 S.W.3d at 910 (explaining that the defendant's explicit direction to prosecute an individual must be "the determining factor in the official's decision to commence the prosecution"). Because Springer did not procure Matthews's prosecution, Matthews fails to establish causation, and her malicious prosecution claim must be dismissed.

## IV.    Conclusion

For the foregoing reasons, we AFFIRM the district court's dismissal of Matthews's claims in full.