

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-16-00324-CV

Angela **MOORE** a/k/a Angela Christine Roberts, Individually and as Representative of the
Estate of Alexandra Elisabeth Anderson, Deceased, Jesse Amaya, and Jason Hays,
Appellants

v.

**STRIKE, LLC**,
Appellee

From the 79th Judicial District Court, Jim Wells County, Texas
Trial Court No. 16-03-55764-CV
Honorable Richard C. Terrell, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:        Karen Angelini, Justice
              Marialyn Barnard, Justice
              Patricia O. Alvarez, Justice

Delivered and Filed:  January 11, 2017

AFFIRMED

This is an appeal from an order granting summary judgment in favor of appellee Strike,

LLC ("Strike"). On appeal, appellants Angela Moore a/k/a Angela Christine Roberts, Individually

and as Representative of the Estate of Alexandra Elisabeth Anderson, Deceased ("Moore"), Jesse

Amaya, and Jason Hays argue summary judgment was improper because genuine issues of

material fact exist as to their claims for vicarious liability, negligent entrustment, negligent hiring,

negligent supervision, and negligent retention. Amaya and Hays also argue the trial court abused

its discretion in striking certain summary judgment evidence, specifically an affidavit of an expert

witness. Because we conclude Strike established its entitlement to judgment as a matter of law and appellants failed to produce any evidence establishing genuine issues of material fact, we affirm the trial court's judgment.

### BACKGROUND

This appeal arises out of an automobile accident that resulted in the death of Moore's daughter, Alexandra Elisabeth Anderson, and injuries to Amaya and Hays. On the evening of the accident, Bradley Price drove his personal pick-up truck from a recreational vehicle park ("RV park") where he was staying to another RV park to visit his supervisor, Phillip Parker. Two other co-workers, Wesley Ferrell and Joseph Magee, rode with him. On their way to the RV park, Price crossed over the center line and collided with two vehicles. Anderson, Amaya and Hays were in the first vehicle. As a result of the collision, Anderson sustained massive injuries and was pronounced dead at the scene. Amaya and Hays suffered serious injuries, but survived.

At the time of the accident, Price was an employee of Strike, an oilfield services company in Jim Wells County. After completing a ten-hour shift, Price had returned to the RV park where he and other Strike employees were temporarily staying. Strike did not provide company housing to its employees, but rather paid each of them a per diem for living expenses. As a result, each employee made his own living arrangements. That evening, like most evenings, Price cooked barbeque for himself and several others. The group relaxed, ate barbeque, and drank beer from approximately 7:15 p.m. until 10:00 p.m. When the barbeque ended, Price and other members of the group decided to visit Parker, a Strike foreman. It is undisputed that at the time of the accident, Price was off duty and driving his personal vehicle with a blood alcohol level of 0.166, more than twice the legal limit.

Price was ultimately charged with two counts of first degree intoxication manslaughter. Strike terminated Price for violating safety procedures, failing to perform duties as required,

misusing company property, and insubordination. Moore, Amaya, and Hays ultimately filed suit against Strike, several Strike affiliates,[1] and Price. As to Strike and its affiliates, appellants alleged the company was liable under the doctrine of vicarious liability for Price's negligent conduct — being under the influence of alcohol and subsequently driving in an unreasonable manner during the course and scope of his employment. According to the petitions, Price's negligent conduct proximately caused the accident that resulted in Anderson's death and Amaya and Hays's injuries. The petitions also alleged Strike had negligently entrusted Price with a vehicle as well as negligently hired, supervised, and retained Price.

Strike filed a traditional motion for summary judgment, arguing it was entitled to judgment as a matter of law on each of the asserted claims because it did not exercise control over or have the right to exercise control over Price's personal vehicle, and Price was acting outside the course and scope of his employment at the time of the accident. In support of its motion, Strike attached copies of Price's employment records, employee separation form, and time card history, as well as the police report regarding the accident, the indictment charging Price with intoxication manslaughter, and Price's trial testimony at the criminal proceeding. Strike also attached deposition excerpts from the depositions of Hays, Amaya, and Parker.

In response, Moore objected to portions of Strike's summary judgment evidence, specifically the indictment and Price's trial testimony at the criminal proceeding. Moore alleged both exhibits contained inadmissible hearsay. Moore also argued summary judgment was improper because Strike failed to prove its entitlement to judgment as a matter of law. According

---

[1] Specifically, appellants filed suit against Strike as well as Brown Testing Services, Pickett Measurement Systems, R&R Oilfield Services, Pickett Systems, Strike I&E, Strike Instrumentation & Electrical, Strike Construction, LLC, Strike Testing, Strike Industrial, Strike Oilfield, and Strike USA. According to Strike, these other named defendants are not legal entities, but instead are assumed names for Strike. During the course of the proceedings below, Amaya and Hays amended their pleadings to include only Strike and Price as defendants. The record also reflects Moore nonsuited her claims against Price. And although the record does not contain a signed dismissal order, Strike asserts, and appellants do not contest, the trial court dismissed the claims against all of its affiliates.

to Moore, genuine issues of material fact existed as to each of her claims. Specifically, Moore argued her summary judgment evidence raised fact issues as to whether Price was acting in the course and scope of his employment and whether Strike exercised control — or at least had the right to exercise control — over Price's personal vehicle. To support her argument, Moore attached excerpts from Parker's deposition and a copy of Strike's employment separation form regarding Price's termination.

According to Moore, Parker's testimony, in combination with the employment separation form, constitutes some evidence that Price was an authorized driver for Strike, was under Strike's control, and was using his personal vehicle in furtherance of Strike's business at the time of the accident. In his deposition, Parker testified several of Strike's employees, both laborers and operators, were from out of town and as a result, temporarily lived together in areas, such as RV parks, located near the work site. Parker testified Strike did not provide company housing or manage these living areas, rather employees "were on their own" in determining where they would live. He explained each employee received a per diem — the amount of which was based on whether the employee was either a laborer or an operator. Strike also paid "truck pay" to some operators who were considered authorized drivers. An authorized driver was an employee, typically an operator, who was authorized by Strike to drive his personal vehicle on the work site. After reviewing Price's employment separation form, Parker testified the form showed Price received truck pay. Parker also testified that on the night of the accident, Price along with the other Strike employees "could have" been coming to his RV park as it was not unusual for employees to come to his campsite for dinner.

Amaya and Hays also filed a response with additional summary judgment evidence, which was ultimately adopted by Moore in her supplemental response. In their response, Amaya and Hays reiterated Moore's contentions that genuine issues of material fact existed as to whether, at

the time of the accident, Price was acting within the course and scope of his employment and whether Strike exercised control over Price's vehicle. In addition to Moore's summary judgment evidence, Amaya and Hays attached excerpts from the depositions of Wesley Ferrell and Joseph Magee, arguing their testimony was some evidence that Price was driving himself and other co-workers to see Parker for a meeting.

In his deposition, Ferrell testified he worked with Price and was having dinner with Price and other employees at Price's RV park when Parker called to see if he wanted to come over to his RV park to "hang out." According to Ferrell, it was not unusual for him and other employees to go to Parker's RV park after work hours. Ferrell added that sometimes, while hanging out with Parker at his RV park, they would discuss work. After dinner, on the night of the accident, Ferrell asked the group at Price's camp if anyone wanted to go to Parker's RV park. A couple of co-workers agreed, and Ferrell rode with Price to the RV park; it was during this ride that the accident occurred.

Magee testified he was with Price on the night of the accident. Magee testified that after dinner, the group decided to go to Parker's camp to "hang out." Magee testified he had "no idea" whether they were going to discuss work, but "[a] lot of times we call — we call it pipelining, like if we just talk about work or something like that at the campground or what have you, or we'll tell stories of what we've seen or done or whatever."

Amaya and Hays also attached affidavits from Matthew Daecher, an expert in risk management of commercial vehicle operations and commercial fleets, and Denise Kay, a human resources expert. In their affidavits, both experts stated they reviewed Price's employment file, Strike's employee handbook, Strike's transportation and travel expenses policy, the depositions of Parker, Ferrell, and Magee, as well as other Strike human resource material. Based on their review of these materials, they opined that: (1) Strike exercised control over Price, but did not properly

prescreen, train, or supervise Price; (2) Price would not have been working in the area or driving to Parker's RV park but for his employment relationship with Strike; and (3) Strike knew or should have known several of its employees were operating vehicles in violation of Strike's policies.

At the summary judgment hearing, the trial court sustained Moore's objections to Price's indictment and trial testimony, stating they would not be considered as evidence in support of Strike's motion. Thereafter, the trial court granted summary judgment in favor of Strike on all of appellants' claims. In its order, the trial court did not specify the grounds for its ruling. Thereafter, Strike filed a motion to sever all of appellants' claims against it in order to render the summary judgment final and appealable. The appellants then timely perfected this appeal.

## ANALYSIS

On appeal, appellants contend the trial court erred in granting summary judgment in favor of Strike on their vicarious liability, negligent entrustment, negligent hiring, negligent supervision, and negligent retention claims. According to appellants, their summary judgment evidence raised genuine issues of material fact as to whether Price was acting within the course and scope of his employment. Specifically, they contend their evidence establishes Price was in the course and scope of his employment because he was driving himself and other employees to Parker's RV park for a work meeting. Appellants further contend the summary judgment evidence raised genuine issues of material fact as to whether Strike exercised control — or at minimum, had the right to exercise control — over Price's vehicle because Strike paid Price truck pay and therefore, use of his vehicle was bound by the rules outlined in the employee handbook. In addition to these arguments, Amaya and Hays contend the trial court abused its discretion by striking the affidavit of their expert — Denise Kay — which was attached to their summary judgment response.

### *Standard of Review*

We review the trial court's grant of summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Willmann v. City of San Antonio*, 123 S.W.3d 469, 472 (Tex. App.—San Antonio 2003, pet. denied). In a traditional motion for summary judgment, the movant bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005); *Hawthorne v. Guenther*, 461 S.W.3d 218, 221 (Tex. App.—San Antonio 2015, pet. denied). A defendant movant who conclusively negates at least one of the essential elements of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). Once the moving party produces evidence establishing its entitlement to summary judgment, the burden shifts to the nonmovant to produce evidence that raises a genuine issue of material fact. *Walker v. Harris*, 924 S.W.2d 375, 376 (Tex. 1996); *Romo v. Tex. Dep't of Transp.*, 48 S.W.3d 265, 269 (Tex. App.—San Antonio 2001, no pet.). "To determine if the non-movant raised a fact issue, we review the evidence in the light most favorable to the non-movant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not." *Hawthorne*, 461 S.W.3d at 221 (citing *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009)). Stated another way, we take as true all evidence favorable to the non-movant and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). If the trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any of the asserted grounds are meritorious. *Davis v. West*, 433 S.W.3d 101, 109 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

### *Striking of Evidence*

We begin with Amaya and Hays's contention that "[t]he trial court abused its discretion in striking Exhibit 'G' of Appellants' Motion for Summary Judgment." In their brief, Amaya and Hays describe Exhibit G as the affidavit of one of its expert witnesses, Denise Kay, and argue it should not have been excluded. However, it appears the exhibit referenced by Amaya and Hays is the exhibit attached to their response, which was not struck by the trial court.

The record reflects Strike filed a motion for summary judgment with several attachments, including Price's indictment — labeled as Exhibit F — and Price's testimony from the criminal proceeding — labeled as Exhibit G. In her response, Moore objected to each of these exhibits. As indicated above, Amaya and Hays also filed a response, attaching multiple exhibits, including the affidavit of Denise Kay, which they labeled as Exhibit G. The record does not contain any objections to their Exhibit G, nor do Amaya and Hays direct us to any objection. Rather, the only objections on file are *Moore's* objections to *Strike's* Exhibits F and G — Price's indictment and trial testimony, which were attached to Strike's motion for summary judgment.

After the summary judgment hearing, the trial court sustained Moore's objections, ruling Strike's Exhibit F (Price's indictment) and Strike's Exhibit G (Price's trial testimony) would not be considered as summary judgment evidence. Nowhere in the record is there an order striking the affidavit of Denise Kay. Moreover, during oral argument, Amaya and Hays point to the trial court's order sustaining Moore's objections to Exhibits F and G attached to Strike's motion for summary judgment. Nevertheless, in their brief, Amaya and Hays argue the trial court abused its discretion in striking the affidavit of Denise Kay. We conclude Amaya and Hays have mistakenly construed the trial court's ruling with regard to Strike's Exhibit G as a ruling on their Exhibit G, Kay's affidavit, which was attached to their response. Because we conclude Amaya and Hays argument is misplaced, we overrule their complaint.

*Course and Scope of Employment*

With regard to appellants' vicarious liability, negligent hiring, negligent supervision, and negligent retention claims, the sole ground in Strike's motion for summary judgment was that Price was acting outside the course and scope of his employment at the time of the accident. In support of this argument, Strike produced evidence establishing that at the time of the accident, Price was off duty and was driving his personal vehicle for purely social reasons, not in furtherance of Strike's business. Thus, according to Strike, because it conclusively negated the course and scope element of appellants' claims, it was entitled to judgment as a matter of law.

In their responses, appellants argued genuine issues of material fact existed as to whether Price was acting within the course and scope of his employment when the accident occurred. According to Moore, she produced more than a scintilla of evidence establishing the reason for Price's trip to Parker's RV park was business related, and as a result, he was acting within the course and scope of his employment under the principle that "if the purpose of serving the master's business actuates the servant to any appreciable extent, his acts are within the course and scope of his employment." *See Bell v. VPSI, Inc.*, 205 S.W.3d 706, 716 (Tex. App.—Fort Worth 2006, pet. denied).[2] Amaya and Hays contend they produced evidence showing Price was acting at the direction of Strike because he was driving himself and his co-workers to a meeting with their supervisor, Parker.

A. *Vicarious Liability*

In general, a person has no duty to control the conduct of another. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007) (per curiam). However, under the theory of

---

[2] We note that at oral argument, Moore conceded Price was not acting within the course and scope of his employment, thereby eliminating our need to address her course and scope argument as it relates to all of her claims. Amaya and Hays, however, maintained during argument that Price was acting within the course and scope of his employment when the accident occurred. We will, therefore, address the course and scope argument.

respondeat superior, an employer may be vicariously liable for the negligent acts of its employee if the employee's actions fall within the course and scope of his employment. *Id*.; *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002). To determine whether an employee's acts are within the course and scope of his employment, we ask whether the employee's act falls within the scope of the employee's general authority, is in furtherance of the employer's business, and is for the accomplishment of the object for which the employee was hired. *Goodyear Tire*, 236 S.W.3d at 757; *Minyard Food Stores*, 80 S.W.3d at 577. "The employee's acts must be of the same general nature as the conduct authorized or incidental to the conduct authorized to be within the scope of employment." *Goodyear Tire*, 236 S.W.3d at 757; *Minyard Food Stores*, 80 S.W.3d at 577. If an employee deviates from the performance of his duties for his own purposes, then the employer is not responsible for what occurs during that deviation." *Goodyear Tire*, 236 S.W.3d at 757; *Minyard Food Stores*, 80 S.W.3d at 577.

It is undisputed that Price was off duty and driving his personal vehicle at the time of the accident. As indicated above, Price had completed a ten-hour work shift and was having a barbeque with other co-workers at his RV park when he decided to drive to Parker's RV park. According to the summary judgment evidence produced by Strike, which included excerpts from Parker's deposition, it was not uncommon for Strike employees to get together after work at each other's campsites and socialize. Parker testified "there is [sic] times whenever people come and eat together at — whether its my RV park or somebody else's," suggesting it was not unusual for employees to come to his campsite for dinner. With regard to Price's actions on the night of the accident, Parker testified he did not know what Price was doing that evening. Parker stated he may have mentioned to Price that he was going to be cooking at his RV park, and it would have been normal for Price and/or other co-workers to get together later in the evening to have dinner

and socialize with him. Parker also stated that whatever Price decided to do after he left the job site that evening was up to him; he had no control over Price's evening plans.

As the summary judgment movant, Strike bore the burden of establishing its entitlement to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Browning*, 165 S.W.3d at 344; *Hawthorne*, 461 S.W.3d at 221. Here, Strike's summary judgment evidence establishes Price was off duty and driving to Parker's RV park for personal, social purposes at the time of the accident. *See Goodyear Tire*, 236 S.W.3d at 757 (holding employee not acting within course and scope of his employment when he drove company truck to convenience store while off duty and fell asleep at wheel); *Bell*, 205 S.W.3d at 717–18 (holding employee not in course and scope of employment as matter of law when traveling off original route for purely personal interests). Based on this evidence, Strike conclusively negated the course and scope element of appellants' vicarious liability claim, entitling it to judgment as a matter of law. *See Frost Nat'l Bank*, 315 S.W.3d at 508; *see also Goodyear Tire*, 236 S.W.3d at 757; *Bell*, 205 S.W.3d at 717–18.

Because Strike proved its entitlement to judgment as a matter of law, the burden shifted to appellants to produce some evidence raising a fact issue. *See Walker*, 924 S.W.2d at 327; *Romo*, 48 S.W.3d at 269. Amaya and Hays argue they produced evidence raising a genuine issue of material fact that Price was acting within the course and scope of his employment because according to them, the evidence shows Price was directed by Parker to drive himself and his co-workers to Parker's RV park for a business meeting. Attached to their response, appellants included excerpts from the depositions of Ferrell and Magee. Specifically, Ferrell testified that after work, he went over to visit Price, who at the time, was preparing barbeque. Ferrell testified he, Magee, and several other friends, including people who did not work for Strike, were "hanging out" and drinking beer at Price's RV park. Magee also testified he had driven to Price's RV park to "say hey and hang out for the weekend." Magee testified that when he arrived, Price was

cooking and everyone was "[j]ust listening to music, hanging out, drinking some beers." The summary judgment evidence also shows that after the group finished eating with Price at his RV park, Price, as well as some other co-workers, including Ferrell and Magee, decided to go to Parker's RV park. Ferrell testified their supervisor, Parker, had called him a couple of times earlier that evening and "wanted to know if we wanted to ride over, they was [sic] all hanging out at their RV park." Ferrell testified he told Parker they were cooking. According to Ferrell, Parker called back later, asking him to come over, and Ferrell again told him he would see what the group wanted to do after they were finished eating. Eventually, the group decided to go to Parker's RV park.

According to Amaya and Hays, Price's trip was business-related because he was going to Parker's RV camp at Parker's direction. Amaya and Hays contend the evidence shows Parker called Ferrell, requesting the group to come over to discuss work. Amaya and Hays further contend this evidence, in conjunction with evidence that employees must comply with their supervisors' orders, raises a fact issue as to whether Price was acting in furtherance of work, i.e., in the course and scope of his employment with Strike. However, a review of the deposition testimony produced by appellants shows appellants have mischaracterized the evidence. No one testified Parker directed or mandated that Price or anyone else on Strike's payroll come to Parker's RV park that night. Indulging every reasonable inference in favor of appellants, at most, Ferrell testified Parker called him and asked whether he and the group wanted to come over to "hang out." *See 20801, Inc.*, 249 S.W.3d at 399.

During oral argument, Amaya and Hays pointed to *Arbelaez v. JustBrakes Corp.* for the proposition that a fact issue exists if there is evidence that an employee was acting in accordance with a supervisor's order. 149 S.W.3d 717 (Tex. App.—Austin 2004, no pet.). Yet, in that case, the evidence established that on his first day, Arbelaez was instructed by his supervisor to make a breakfast run as his "first assignment" of the day. *Id.* at 718-19. Here, there is nothing in the

summary judgment record establishing Price was ordered or required to drive himself and others to Parker's RV park to discuss business.

Amaya and Hays also point to excerpts from Magee and Ferrell's deposition testimony as some evidence that Price drove to Parker's RV park to discuss work. Yet, when reviewing these excerpts, both Magee and Ferrell testified they were going to Parker's RV park to socialize, and when they socialized, they sometimes discussed work. Magee testified he had "no idea" whether they were going to discuss work, but "[a] lot of times we call — we call it pipelining, like if we just talk about work or something like that at the campground or what have you, or we'll tell stories of what we've seen or done or whatever." According to Ferrell, it was not unusual for him and other employees to go to Parker's RV park after work hours to "hang out." Ferrell also testified he told Parker he would see if the group wanted to go to his camp after dinner, indicating he was not under any obligation to comply with Parker's invitation. When asked whether he was going to Parker's RV park for work, Ferrell laughed, stating "No. no. . . If work came up, I mean, it was strictly, you know, whatever. It wasn't any kind of game planning or anything like that, or — what went on that day or something, you know."

Accordingly, we conclude that when viewed in the light most favorable to the non-movant, the summary judgment evidence establishes Price and the other men traveled to Parker's RV park for purely social purposes, not business purposes. *See Goodyear Tire*, 236 S.W.3d at 757; *Minyard Food Stores*, 80 S.W.3d at 577; *Hawthorne*, 461 S.W.3d at 221. There is no summary judgment evidence that Price was required or ordered to drive to Parker's RV park or that Price was on his way to Parker's RV park to discuss work. Rather, the evidence shows that at the time of the accident, Price was on his way to Parker's RV park to socialize with co-workers, including his supervisor, and in the course of socializing, the group might have incidentally discussed their work day or events that occurred at work. *See Goodyear Tire*, 236 S.W.3d at 757; *Minyard Food Stores*,

- 13 -

80 S.W.3d at 577. The summary judgment evidence is consistent in establishing that Price and his fellow co-workers routinely went to each other's campsites to socialize and sometimes, when they socialized, they talked about what happened at work that day. We therefore hold the trial court did not err in granting summary judgment in favor of Strike as to appellants' vicarious liability claim because the summary judgment evidence establishes as a matter of law that Price was not in the course and scope of his employment at the time of the accident.

### B. *Negligent Hiring, Supervision, and Retention*

"Negligent hiring, retention, and supervision claims are all simple negligence causes of action based on an employer's direct negligence rather than on vicarious liability." *See Dangerfield v. Ormsby*, 264 S.W.3d 904, 912 (Tex. App.–Fort Worth 2008, no pet.). A cause of action for simple negligence arises when a person breaches a legal duty and that breach proximately causes damages. *Id.* In the context of negligent hiring, retention, and supervision, Texas courts, including this court, have recognized that an employer owes a duty to the public to ascertain the qualifications and competence of the employees it hires, particularly when those employees are engaged in conduct that requires them to have experience that could be hazardous to the safety of others. *See id.* (citing *Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 49 (Tex. App.—Fort Worth 2002, no pet.)); *see also Martinez v. Wahl Landscape, Inc.*, No. 04-11-00091-CV, 2012 WL 13263030, at *3 (Tex. App.—San Antonio April 18, 2012, no pet.) (mem. op.) (same). With that said, the Texas Supreme Court has "never expressly set out what duty an employer has in hiring employees," but it has recognized that "there is a broad consensus among Texas courts" that these claims require "the plaintiff to suffer some damages from the foreseeable misconduct of an employee hired pursuant to the defendant's negligent practices." *Wansey v. Hole*, 379 S.W.3d 246, 247 (Tex. 2012). In sum, to impose liability on an employer under the theory of negligent hiring or retention, a plaintiff must show the employer's failure to investigate,

screen, or supervise its employees proximately caused the injuries incurred by the plaintiff. *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 296 (Tex. 2006). To impose liability on an employer under the theory of negligent supervision, a plaintiff must show that an employer's failure to supervise its employees caused his injuries. *Dangerfield*, 264 S.W.3d at 912.

In its motion for summary judgment, Strike argued it was entitled to summary judgment as a matter of law with regard to appellants' negligent hiring, retention, and supervision claims because it owed no duty to appellants. According to Strike, it owed no duty to appellants because Price's conduct was not foreseeable because it was not job-related. For support, it relies on cases recognizing that the theories of negligent hiring, negligent retention, and negligent supervision require a plaintiff's harm be the result of job-related conduct. *See e.g., Peek v. Equip. Servs.*, 906 S.W.2d 529, 534 (Tex. App.—San Antonio 1995, no writ) (holding that because there is no evidence incident was job-related, there is no evidence conduct was foreseeable and thus, no duty). In other words, "[t]he employer-employee relationship . . . may create a duty to a third party only if the third party's harm is brought about by reason of the employment and is, in some manner, job-related." *Fernea v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 03-09-00566-CV, 2011 WL 2769838, at *8 (Tex. App.—Austin July 12, 2011) (mem. op.), *judgment withdrawn, appeal dism'd*, 03-09-00566-CV, 2014 WL 5801862 (Tex. App.—Austin Nov. 5, 2014, no pet.) (recognizing connection between harm incurred by plaintiff being result of job-related conduct and elements of duty and proximate cause); *see also Peek*, 906 S.W.2d at 534 (same). In response, appellants reiterate their arguments set forth above, stating they produced evidence that Price's conduct was job related and ultimately foreseeable; therefore, a genuine issue of material fact exists as to the duty element of their negligent hiring, retention, and supervision claims.[3]

---

[3] We again note that during oral argument, Moore concedes Price's conduct was not job related.

We agree with Strike. As set out above, Strike produced summary judgment evidence establishing Price's conduct was outside the course and scope of his employment as a matter of law because the accident occurred when Price was off duty and was driving to Parker's RV park for social purposes as opposed to job-related purposes. To impose a duty on an employer under the theories of negligent hiring, negligent retention, and negligent supervision, the plaintiff's harm must be foreseeable in the sense that it is brought about by conduct that was in some manner job-related. *See Fernea*, 2011 WL 2769838, at *8. Because Strike established as a matter of law that Price's conduct was not job-related, Strike also established Price's conduct was not foreseeable. *See id.* Thus, Strike conclusively negated the duty element of appellants' negligent hiring, negligent supervision, and negligent retention claims, entitling it to judgment as a matter of law. *See id.*; *see also Frost Nat'l Bank*, 315 S.W.3d at 508.

To raise a genuine issue of material fact as to duty — or more specifically, that Price's conduct was foreseeable because it was job-related — appellants rely on its evidence that Price was acting at the direction of his supervisor or driving to a business meeting. However, as indicated above, we conclude Strike proved as a matter of law Price's conduct was not job-related, and the summary judgment evidence failed to raise a fact issue as to whether Price's conduct was job related. Accordingly, we hold the trial court did not err in granting summary judgment in favor of Strike as to appellants' negligent hiring, negligent retention, and negligent supervision claims.

### *Right of Control*

With regard to appellants' negligent entrustment claim, the sole ground in Strike's motion for summary judgment was that it did not have the right to control Price's vehicle at the time of the accident as a matter of law. To support its argument, Strike produced evidence that established Price was off duty and traveling in his personal vehicle to Parker's RV park at the time of the accident, and how an employee used his personal vehicle during off duty hours was not subject to

Strike's control. Appellants, however, argue they produced some evidence that Strike controlled, or at least had the right to control, Price's use of his vehicle. To support their argument, appellants point to evidence that showed Strike paid Price "truck pay" for the use of his vehicle, and thus, leased the vehicle from Price for a business use. Appellants also point to the employee handbook as evidence that Strike had the right to control Price's personal vehicle because it was leasing the vehicle from him.

To establish an employer's liability under the theory of negligent entrustment, a plaintiff must prove: (1) the owner entrusted the automobile (2) to a person who was an incompetent or reckless driver, (3) who the owner knew or should have known was incompetent or reckless, (4) the driver was negligent, and (5) and the driver's negligence proximately caused the accident and the plaintiff's injuries. *Goodyear Tire*, 236 S.W.3d at 757 (citing *Schneider v. Esperanza Transmission Co.*, 744 S.W.2d 595, 596 (Tex. 1987)). This court has concluded that a non-owner of a vehicle may be held liable for negligent entrustment of a vehicle if the non-owner has the right to control the vehicle. *See Garcia v. Cross*, 27 S.W.3d 152, 155 (Tex. App.—San Antonio 2000, pet. denied); *Rodriguez v. Sciano*, 18 S.W.3d 725, 728 (Tex. App.—San Antonio 2000, no pet.). We have said, "[t]he entruster need only have the right of control." *Garcia*, 27 S.W.3d at 155. However, there is no evidence of right of control in this case.

The summary judgment evidence produced by Strike shows that although Strike paid Price "truck pay" for use of his vehicle for work-related purposes, Strike did not exercise control over Price when he was off duty. According to Parker, Price's vehicle was not subject to Strike's control after Price left the job site, or in Parker's words, "There's no pay after that, no — no — they are on their own. They don't work for me anymore after that." Parker explained Strike authorized certain employees to receive "truck pay," which meant those employees could drive their personal vehicles to and on the job site. Parker testified that because only authorized drivers

were allowed to drive to and on the job site, these authorized drivers would transport other employees (nonauthorized drivers) to and from the job site each morning and afternoon. In Parker's words, "You're paid [truck pay] from 7:00 o'clock that morning. They [Strike] pay one way to work. When they leave the right-of-way when we get off work, that's it. They don't pay after that. . . . they are on their own. They don't work for me anymore after that." When asked whether employees, like Price, represent Strike when they were at their RV parks, Parker testified, "I can tell you that when we're at them trailer parks Strike ain't nothing to do with what we're doing." Parker also testified, "I can't be telling them what to do whenever they're off work . . . when we're in the trailer park, we're not on Strike's business." Based on this testimony, we conclude Strike established as a matter of law that it did not exercise control, or have the right to exercise control, over Price's use of his personal vehicle during off duty hours.

The only evidence appellants produced to raise a genuine issue of material fact with respect to right of control was evidence that Price received "truck pay," thereby, establishing a leasing relationship, which was subject to the rules and regulations outlined in the employee handbook. We first note that evidence of "truck pay" alone does not necessarily vest an employer with control over that employee's vehicle.[4] *See Atlantic Industries, Inc. v. Blair*, 457 S.W.2d 511, 519 (Tex. App.—El Paso 2014), *rev'd on other grounds,* 482 S.W.3d 57 (Tex. 2016); *see also Painter v. Sandridge Energy, Inc.*, No. 08-13-00272-CV, 2015 WL 6704759, at *5 (Tex. App.—El Paso Nov. 3, 2015, pet. denied) (recognizing that "[s]everal courts have held that mere payment or reimbursement for transportation does not equate to control"); *see also ACME Energy Servs., Inc.*

---

[4] Additionally, with regard to any argument that Price's receipt of "truck pay" alone is some evidence of course and scope, courts have recognized that evidence that an employer reimburses an employee for use of his personal vehicle does not equate to evidence of course and scope when there is no evidence of control. *See Wilson v. H.E. Butt Grocery Co.*, 758 S.W.2d 904, 907 (Tex. App.—Corpus Christi 1988, no writ) (holding reimbursement for mileage when employee driving home did not place worker in course and scope when employer had no control over means of transportation and route taken). With that said, we also note Moore conceded at oral argument that evidence of "truck pay" alone is insufficient to establish right of control.

*v. Aranda*, 08–02–00205–CV, 2004 WL 868486, at \*3 (Tex. App.—El Paso April 22, 2004, pet. denied) (mem. op.) (pointing out that daily driving pay does not place employee in course and scope of employment while traveling to and from work in the employee's automobile).

Moreover, we do not agree with appellants' assertion — particularly, Moore's contention — that Price's receipt of truck pay established a leasing arrangement between Strike and Price, subjecting Price's personal vehicle to Strike's control. According to Moore, under section 317 of the Restatement (Second) of Torts, an employer is liable for the off duty torts of his employees which are committed with an employer's chattels. Restatement (Second) of Torts § 317 (1965); *see DeLuna v. Guynes Printing Co. of Texas, Inc.*, 884 S.W.2d 206, 210 (Tex. App.—El Paso 1994, writ denied) (pointing out that "if Texas recognizes a Section 317 cause of action, it is only in a limited sense that in order for a duty to arise, the employer must not only have some knowledge of the employee's condition or incapacity, but must exercise some control or perform some affirmative act of control over the employee"). Yet, we find no authority for the proposition, nor does Moore point us to any, that an employer's reimbursement for use of an employee's personal vehicle establishes evidence of a leasing relationship, transforming an employee's personal vehicle into an employee's chattel. And although the employee handbook may outline an employee's use of leased vehicles, we do not agree with Moore that Price's vehicle was leased by Strike and therefore subject to Strike's control during off duty hours.

Thus, without any other evidence besides mere "truck pay" and an employee handbook outlining an employee's use of leased vehicles, we conclude there is no evidence establishing Strike exercised control over Price's use of his vehicle at the time of the accident. *See Atlantic Industries*, 457 S.W.2d at 519 (stating that because there was no evidence that employee had to account for how he used personal vehicle or spent vehicle allowance, there was no evidence of right of control); *see also Painter*, 2015 WL 6704759, at \*5 (stating that no right of control in

absence of evidence showing employer controlled manner of transport, route taken, or other details of driving). Therefore, because Strike established as a matter of law that it did not exercise control over Price's use of his vehicle at the time of the accident, and appellants failed to produce any evidence raising a genuine issue of material fact in this respect, we hold the trial court did not err in granting summary judgment in favor of Strike with respect to appellants' negligent entrustment claim.

## CONCLUSION

Based on the foregoing, we overrule Amaya and Hays challenge concerning the affidavit of the expert. Moreover, after reviewing the summary judgment evidence, we hold: (1) Strike established its right to summary judgment as a matter of law, proving Price was not in the course and scope of his employment at the time of the accident and Strike did not exercise control over Price's use of his vehicle; and (2) Appellants failed to produce any evidence raising a genuine issue of material fact that Price was acting within the course and scope of his employment or that Strike controlled Price's use of his vehicle. Based on the foregoing, we affirm the summary judgment in favor of Strike.

Marialyn Barnard, Justice