

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-16-00739-CV

Kara **LERMA**,
Appellant

v.

**PIPE MOVERS, INC**.,
Appellee

From the 79th Judicial District Court, Jim Wells County, Texas
Trial Court No. 16-09-56471-CV
Honorable Richard C. Terrell, Judge Presiding

Opinion by:  Irene Rios, Justice

Sitting:  Marialyn Barnard, Justice
Rebeca C. Martinez, Justice
Irene Rios, Justice

Delivered and Filed:  March 21, 2018

AFFIRMED

This is an appeal from an order granting summary judgment in favor of appellee Pipe

Movers, Inc. ("PMI").  On appeal, appellant Kara Lerma argues summary judgment was improper

because genuine issues of material fact exist as to her underlying claims.  We affirm the trial court's

judgment.

### BACKGROUND

This appeal arises out of an automobile accident involving Lerma and PMI's employee

Rayleen Simpson that resulted in injuries to Lerma.  At approximately 7:00 pm on January 14,

2013, Simpson was leaving the parking lot at Rathole Drilling. Simpson made a left turn across a four-lane highway, failing to yield to oncoming traffic. Lerma, who was unable to avoid the collision, drove into the left side of Simpson's car. Law enforcement officials issued Simpson a citation for failure to yield the right of way.

Lerma sued PMI, alleging it was vicariously liable for any negligence by Simpson causing the collision. Lerma also alleged PMI was grossly negligent, and further alleged the following negligence claims against PMI: failure to supervise its employee in the use and operation of the vehicle; negligent hiring, supervision, and retention of Simpson; negligent disregard of Simpson's criminal record; negligent hiring and supervision of safety officers; and failure to properly ensure PMI drivers observed and adhered to driver and traffic laws and regulations. The trial court granted PMI's hybrid traditional and no-evidence summary judgment motion.

Lerma perfected this appeal.

ANALYSIS

**Standard of Review**

When a party moves for both no-evidence and traditional summary judgment, we first review the trial court's summary judgment under the no-evidence standard. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex.2004). Under that standard, after an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. TEX. R. CIV. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See* TEX. R. CIV. P. 166a(i); *Hamilton v.. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton*, 249 S.W.3d at 426 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Timpte Indus.*, 286 S.W.3d at 310 (quoting *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

### Credibility and Competency of Simpson's Testimony

We will begin our summary judgment analysis by addressing the sub-issue in which Lerma contends a genuine issue of material fact exists because Simpson's deposition testimony regarding the cause of the collision conflicts with Simpson's description of the collision contained in an email to her supervisor.

The summary judgment evidence shows that approximately an hour after the collision occurred, Simpson exchanged the following email messages with her supervisor.

> Simpson: I was just involved in a pretty bad wreck where a lady t-bon[]ed me. My truck is not driveable, I think I'm okay. Will keep you posted[.]

> Supervisor: Oh no, when and where did this happen? Are you sure you are alright?

> Simpson: Alice. I just pulled out of [R]athole [D]rilling[']s office. I'm really sore, a lil banged up, but not bad. The lady who hit me was doing about 75 mph and was looking at her phone. Didn't see me. Happened about an hour ago.

The police report generated regarding the collision noted that Simpson was cited for failing to yield the right of way. The description of the collision contained in the police report indicated that Simpson created a situation in which Lerma's vehicle struck Simpson's vehicle on the driver's side.

During her deposition, Simpson testified about the collision, stating: "I was pulling out of the Rathole Drilling drive. It was after working hours, business hours. It was dark, and I was making a left-hand turn. And as I was doing so, I failed to see her." Later during her deposition, Simpson answered "[c]orrect" when asked, "[b]ut when you were pulling out is when you felt you had the right-of-way?" Simpson also stated: "You look, you look, you look left, you look right, you look left, I just didn't look again left, and she was already there." Also, when asked if she recalled what she had told police, the following exchange occurred between Simpson and Lerma's counsel:

[Simpson:]    What happened, that I had pulled out and we had a collision.

[Counsel:]    Okay. That you failed to look left?

[Simpson:]    Right, yeah, I told them the truth.

Lerma asserts these are contradictory descriptions of the collision's cause, which Lerma further asserts indicates a lack of credibility on Simpson's part and shows Simpson's testimony is contradictory and inconsistent. Essentially, Lerma would have this court infer that because Simpson's deposition testimony describing the collision varies from the description of the collision in her email to her supervisor, Simpson's testimony that she was on her way home upon leaving Rathole Drilling lacks credibility.

Stacking one inference upon another inference does not create a genuine issue of material fact. *See, e.g. Schlumberg Well Surveying Corp. v. Nortex Oil*, 435 S.W.2d 854, 858 (Tex. 1968); *Zavala v. Burlington N. Santa Fe Corp.*, 355 S.W.3d 359, 372-73 (Tex. App.—El Paso 2011, no

pet.).  Upon reviewing the summary judgment evidence and indulging every reasonable inference in favor of Lerma, at most, Simpson's description of the collision at the time of her deposition was more specific and detailed than the description of the collision Simpson gave her supervisor.

Lerma's sub-issue regarding the credibility of Simpson's testimony is overruled.

### Course and Scope of Employment

PMI's no-evidence summary judgment motion alleged that no evidence exists that Simpson was in the course and scope of her employment with PMI at the time of the collision or that Simpson fell within the special mission exception to the course and scope requirement.  On appeal, Lerma contends the trial court erred by granting summary judgment in favor of PMI because her summary judgment evidence raised genuine issues of material fact as to whether Simpson was acting within the course and scope of her employment.  Specifically, Lerma argues her evidence establishes Simpson was engaged in the business of her employer at the time of the collision, the "coming and going rule" does not apply, and Simpson was on a special mission at the time of the collision.

The summary judgment evidence filed by Lerma establishes Simpson was employed by PMI as an outside salesperson.  According to the deposition of PMI owner Melanie Evans, an outside salesperson's duties included "goodwill" and educating customers, as well as potential customers, about the products PMI provides.  Once a customer expressed its needs, the outside salesperson communicated with "inside sales" to obtain specific information regarding pricing and availability of product.  In her deposition, Simpson testified her duties included establishing new business and maintaining existing business accounts.

Evans confirmed Simpson was the only PMI employee who drove her own vehicle, which was a part of her employment contract.  Evans and Simpson both stated Simpson received a $750

monthly allowance for the use of her personal vehicle. Additionally, Simpson placed magnetic signs on the doors of her vehicle, indicating she worked for PMI.

It is undisputed the accident occurred as Simpson was leaving the parking lot of Rathole Drilling, a PMI customer. Simpson testified she arrived at Rathole Drilling at approximately 4 pm, but was not able to meet with her contact immediately because he was busy dealing with an emergency situation. Simpson did not leave until approximately 7 pm. According to her deposition testimony, Simpson visited Rathole Drilling once a month, and on that day, Rathole Drilling was her last visit. Simpson testified that when she left Rathole Drilling, it was after business hours, it was dark, and she was on her way home.

Evans testified in her deposition that company policy was very clear that working hours were from 8 am to 5 pm, even for outside sales personnel. According to Evans, if an outside salesperson could not immediately meet with a customer contact, the salesperson should reschedule the meeting. Evans also testified it was company policy that if an outside salesperson needed to extend his or her duties past regular business hours, the salesperson was required to immediately contact his or her immediate supervisor to advise the supervisor of the situation. Evans stated that if the salesperson did not do so, then the work beyond regular business hours was not authorized. Simpson said she did not often visit with customers after 5:00 pm, only doing so perhaps once a month. Simpson testified she did not request or receive authorization to work beyond regular business hours on the evening of the car accident. Simpson further testified she was on her way home at the time the collision occurred.

## A. *Vicarious Liability*

In general, a person has no duty to control the conduct of another. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007) (per curiam). However, under the theory of respondeat superior, an employer may be vicariously liable for the negligent acts of its employee

if the employee's actions fall within the course and scope of his employment. *Id*.; *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002).

To determine whether an employee's acts are within the course and scope of his employment, we ask whether the employee's act falls within the scope of the employee's general authority, is in furtherance of the employer's business, and is for the accomplishment of the object for which the employee was hired. *Goodyear Tire*, 236 S.W.3d at 757; *Minyard Food Stores*, 80 S.W.3d at 577. "The employee's acts must be of the same general nature as the conduct authorized or incidental to the conduct authorized to be within the scope of employment." *Goodyear Tire*, 236 S.W.3d at 757; *Minyard Food Stores*, 80 S.W.3d at 577. An employer is liable for the negligent acts of his employee only if, on the occasion in question, the employer had the right and power to direct and control the employee in the performance of the causal act or omission at the time of its occurrence. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 542 (Tex. 2003); *Arbelaez v. Just Brakes Corp.*, 149 S.W.3d 717, 720 (Tex. App.—Austin 2004, no pet.). An employee generally is not in the course and scope of employment while driving a vehicle to and from her place of work. *Rocamontes v. Evergreen Presbyterian Ministries, Inc.*, No. 02-11-00471-CV, 2012 WL 4936602, *2 (Tex. App.—Fort Worth 2012, no pet); *London v. Tex. Power Light Co.*, 620 S.W.2d 718, 720 (Tex. App.—Dallas 1981, no writ).

Lerma focuses on Simpson's use of her own vehicle, for which she received an allowance and on which she displayed PMI's signage, to support the argument that the "coming and going rule" does not apply and Simpson was in the course and scope of her employment. Lerma relies on *Leordeanu*, which sets out an exception for transportation furnished as part of an employment contract or "paid for by the employer." *See Leordeanu v. American Protection Ins. Co*, 330 S.W.3d 239, 249 (Tex. 2010). However, *Leordeanu* is inapposite because it is a worker's compensation case in which the court interpreted the then-current version of the worker's compensation law.

Lerma claims that because Simpson received an allowance for the use of her own vehicle, and she was using that vehicle at the time of the collision, she was in the course and scope of her employment at the time of the collision. Texas courts have held otherwise. *See, e.g., London*, 620 S.W.2d at 719-20. In *London*, our sister court held that although the employee was reimbursed for travel expenses, the employee was not acting in the course and scope of employment at the time of injury, which occurred while the employee was traveling to a temporary work site. *Id*. at 720. Consequently, an allowance to cover the use of Simpson's personal vehicle does not, alone, create a genuine issue of material fact as to whether Simpson was in the course and scope of her employment.

Lerma additionally relies on the fact that PMI provided Simpson with magnetic signage for the sides of her truck bearing PMI identification. The magnetic signage was on Simpson's truck at the time of the collision. Generally, a vehicle displaying a company's logo supports a presumption that the company owns the vehicle and the driver is an agent of the company. *Rodriguez v. United Van Lines, Inc.*, 21 S.W.3d 382, 383-84 (Tex. App.—San Antonio 2000, pet. denied). As we noted in *Rodriguez*, "the very nature of the [branded vehicle] doctrine contemplates that the opposing party may bring forth evidence to refute ownership." *Id*. The rebuttable presumption that a driver is in the company's employ and within the course and scope of her employment stems from the company's ownership of the vehicle. *Hunsucker v. Omega Industries*, 659 S.W.2d 692, 695-97 (Tex. App.—Dallas 1983, no writ). Therefore, conducting a review of both the evidence in support of the branded vehicle doctrine as well as the facts rebutting it is not inconsistent with the standards of a no-evidence review. *Rodriguez*, 21 S.W.3d at 383-84.

Both Simpson's and Evans's testimony rebutted any presumption that could have otherwise been raised under the branded vehicle doctrine. Simpson testified in her deposition that she, not PMI, owned the truck she was driving at the time of the collision. Further, Evans testified

that under Simpson's employment contract, PMI retained no right to control the use of Simpson's personal vehicle despite Simpson's receipt of the allowance. Lerma presented no further evidence in response to PMI's no-evidence summary judgment motion.

In the alternative, Lerma points to the special mission exception to the course and scope vicarious liability requirement and alternatively contends that a fact issue exists as to whether Simpson was on a special mission for PMI. The sole evidence Lerma relies on to support her contention is Simpson's use of a specific mode of travel at the direction of PMI — her personal vehicle, for which she was paid a monthly allowance.

An exception to the general rule that an employee is not in the course and scope of employment while driving to and from work exists "where an employee has undertaken a special mission at the direction of his employer." *Chevron U.S.A., Inc. v. Lee*, 847 S.W.2d 354, 356 (Tex. App.—El Paso 1993, no writ). To be on a special mission, an employee must be under the control of the employer or acting in furtherance of the employer's business with the employer's express or implied approval. *Upton v. Gensco*, Inc., 962 S.W.2d 620, 621 (Tex. App.—Fort Worth 1997, pet. denied); *Direkly v. ARA Devcon, Inc.*, 866 S.W.2d 652, 654 (Tex. App.—Houston [1st Dist.] 1993, writ dism'd w.o.j.).

The evidence in this case conclusively shows Simpson was not on a special mission when the collision occurred. A special mission is a specific errand that an employee performs for her employer, either as part of her duties or at her employer's request. *Upton*, 962 S.W.2d at 621. A special mission involves work or work-related activity apart from the employee's regular job duties. *Chevron*, 847 S.W.2d at 356 (finding an employee to have been within the course and scope of employment when collision occurred as employee was en route to a mandatory seminar on his scheduled day off); *see also Arbelaez*, 149 S.W.3d at 721-22 (holding employee was in the

course and scope of employment when collision occurred while he was making a "breakfast run" at his manager's affirmative request).

In this case, the summary judgment evidence establishes PMI did not direct Simpson to remain at Rathole Drilling past normal working hours to meet with the Rathole Drilling contact. Further, no evidence exists of a policy requiring salespersons to extend their working hours. Rather, the evidence shows extending working hours required specific authorization, which was not present in this case. The summary judgment evidence in the record before us shows no more than that Simpson was driving home from her last sales call of the day, which extended beyond normal business hours. Simpson was not on a special errand directed by PMI.

As the nonmovant, Lerma was required to produce summary judgment evidence that raises a genuine issue of material fact to defeat PMI's no-evidence motion. Examining the entire record in the light most favorable to Lerma as the nonmovant, indulging every reasonable inference and resolving any doubts against PMI's no-evidence motion, no evidence exists that Simpson was in the course and scope of her employment with PMI when the collision occurred.

Accordingly, Lerma's challenge to the trial court's order granting summary judgment in favor of PMI on the issue of vicarious liability is overruled.

## B. *Negligent Hiring, Supervision, Retention, and Training*

"Negligent hiring, retention … supervision[, and training] claims are all simple negligence causes of action based on an employer's direct negligence rather than on vicarious liability." *See Dangerfield v. Ormsby*, 264 S.W.3d 904, 912 (Tex. App.—Fort Worth 2008, no pet.). A cause of action for simple negligence arises when a person breaches a legal duty and that breach proximately causes damages. *Id.* In the context of these claims, Texas courts have recognized that an employer owes a duty to the public to ascertain the qualifications and competence of the employees it hires, particularly when those employees are engaged in occupations that require skill

and experience, and that could be hazardous to the safety of others. *See id*. (citing *Morris v. JTM Materials, Inc*., 78 S.W.3d 28, 49 (Tex. App.—Fort Worth 2002, no pet.)). However, the Texas Supreme Court has "never expressly set out what duty an employer has in hiring employees," but has recognized "there is a broad consensus among Texas courts" that these claims require "the plaintiff suffer some damages from the foreseeable misconduct of an employee hired pursuant to the defendant's negligent practices." *Wansey v. Hole*, 379 S.W.3d 246, 247 (Tex. 2012). Therefore, to impose liability on an employer under the theory of negligent hiring or retention, a plaintiff must show the employer's failure to investigate, screen, or supervise its employees proximately caused the injuries incurred by the plaintiff. *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 796 (Tex. 2006). To impose liability on an employer for negligent supervision, a plaintiff must show that an employer's failure to supervise its employees caused his injuries. *Dangerfield*, 264 S.W.3d at 913. "To establish a claim for negligent training, a plaintiff must prove that a reasonably prudent employer would have provided training beyond that which was given and that failure to do so caused his injuries." *Id*. at 912-13.

In its no-evidence motion for summary judgment, PMI argued it was entitled to summary judgment as a matter of law with regard to Lerma's negligence claims because Lerma presented no evidence PMI owed a duty to Lerma, breached that duty, or that Lerma's damages were proximately caused by the breach of PMI's duty. In response to PMI's no-evidence motion for summary judgment, Lerma relied on the same evidence presented in support of her argument that Simpson was within the course and scope of her employment. The record does not indicate Lerma presented any evidence raising a genuine issue of material fact with regard to whether PMI owed a duty to Lerma, breached that duty, or that Lerma's damages were proximately caused by the breach of PMI's duty in response to PMI's no-evidence motion for summary judgment.

Therefore, Lerma's challenges to the trial court's order granting summary judgment in favor of PMI on the claims of negligent hiring, retention, supervision, and training are overruled.

## Gross Negligence

Gross negligence requires a showing that (1) viewed objectively from the actor's standpoint, the act or omission complained of involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceeds in conscious indifference to the rights, safety, or welfare of others. TEX. CIV. PRAC. & REM. CODE § 41.001(11)(A), (B); *Boerjan v. Rodriguez*, 436 S.W.3d 307, 311 (Tex. 2014) (per curiam); *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001) (citing *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 23 (Tex.1994)). Under the first, objective element, an extreme risk is "not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff." *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998). Under the subjective element, "actual awareness means the defendant knew about the peril, but its acts or omissions demonstrated that it did not care." *Id.* "Evidence of simple negligence is not enough to prove either the objective or subjective elements of gross negligence." *Id.*

In her third amended petition, Lerma contended PMI was grossly negligent in light of Simpson's driving and arrest record. In its no-evidence motion for summary judgment, PMI challenged Lerma's allegation of gross negligence, arguing Lerma presented no evidence of the elements of gross negligence. In light of PMI's no-evidence motion regarding the elements of gross negligence, Lerma had the burden of to come forward with more than a scintilla of evidence that PMI's alleged gross negligence was a proximate cause of the collision.

During her deposition, Simpson testified she had received a traffic violation for speeding, for which she completed a "defensive driving" course. The record shows the traffic violation

occurred in 2009, prior to Simpson's employment with PMI.  During her deposition, Evans acknowledged Simpson had received a "DUI" that "never went anywhere," meaning the charge was dismissed.  The record shows that initially, PMI began an internal investigation, which it later abandoned after determining the collision did not occur while Simpson was "on the clock."  The record also indicates that following the accident, which PMI maintained occurred when Simpson was "off the clock," PMI did not reprimand or discipline Simpson for being at fault for the collision.  Also, the record indicates although Simpson was told not to visit customers outside business hours, she was not reprimanded or disciplined for violating the working hours policy.

However, on the record before us, there simply is no evidence that employing or retaining Simpson, who had been cited once for speeding and charged once with a "DUI" that was later dismissed, involved an extreme degree of risk that PMI was grossly negligent in employing or retaining her.  That is, there is no evidence that, viewed objectively from PMI's standpoint, PMI's hiring or retaining  of Simpson involved an extreme degree of risk of which PMI possessed actual awareness but nevertheless proceeded to do so in conscious disregard to the rights, safety, and welfare of others.

Even indulging every inference in Lerma's favor, we conclude Lerma failed to bring forward more than a scintilla of probative evidence raising a genuine issue of material evidence of the elements of gross negligence.

Lerma's challenge to the trial court's order granting summary judgment in favor of PMI on the claim of gross negligence is overruled.

## CONCLUSION

Based on the foregoing reasons, we affirm the trial court's judgment.

Irene Rios, Justice